UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMANDA FLANNERY,

                        Plaintiff,

-against-

THE CITY OF ROCHESTER, a municipal entity, PAUL ROMANO, "JOHN DOE POLICE OFFICERS 1-200" (names and number of whom are unknown at present), COUNTY OF MONROE, TODD BAXTER, "RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names and number of whom are unknown at present), and other unidentified members of the Rochester Police Department and Monroe County Sheriff's Office,

                        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

Case no: 22-cv-6101

---

**PRELIMINARY STATEMENT**

Plaintiff participated in protests on four consecutive evenings in September 2020. Despite returning night after night, Plaintiff now complains that she was irritated and harmed by the pepper spray that law enforcement utilized to disperse the thousands of individuals occupying downtown Rochester, NY.

Plaintiff persists in this dubious beginning by failing to put forth allegations to plausibly state her claims. Defendants City of Rochester ("City") and Paul Romano (collectively "City Defendants") thus move to dismiss Plaintiff's first, third, fourth, seventh, eighth, eleventh, twelfth, and thirteenth claims for failure to state a claim.

**STATEMENT OF FACTS**

(Plaintiff's allegations are stated as fact for purposes of this motion only.)

Plaintiff participated in the protests on four consecutive days: September 2, and the evenings of September 3-4, 4-5, and 5-6, 2020 (Amended Complaint ¶¶ 29, 36, 6, 77) with hundreds or thousands of other protestors (*id.* at ¶¶ 61, 83, 115).

During these protests, she was sprayed by pepper balls, pepper spray, and/or tear gas by law enforcement. *Id.* at ¶¶ 31, 43, 68, 86. "Pursuant to policy, RPD [City Police Department] officers and MCSO [Monroe County Sheriff's Office] deputies were ordered to target journalists, legal observers, and others like Ms. Flannery who were filming and/or documenting their response to the protesters, in retaliation for them documenting and/or recording the law enforcement response to the protests." *Id.* at ¶ 110.

RPD officers had a duty "to protect [protestors] from harm or physical violence" (Amended Complaint at ¶ 261), but instead negligently used weapons and violence against protestors. By permitting this type of response, the City "breached [its] duty to keep demonstrators safe" (*id.* at ¶¶ 246-248, 251-256). Also throughout these situations, the individual Defendants "failed to intervene on Plaintiff's behalf despite having had realistic opportunities to do so." *Id.* at ¶ 212. Subsequent to the protests, "City officials effectively ratified the RPD's violent response" and "[RPD] condoned its officers' actions." *Id.* at ¶ 115.

On October 13, 2020, Plaintiff went to the City Public Safety Building to inquire about the whereabouts of a friend. Amended Complaint ¶¶ 94. After refusing a demand that she leave, Plaintiff was pushed, shoved, pinned to a wall, and struck by a RPD officer. *Id.* at ¶¶ 97-98.

Plaintiff now brings claims against the against the City for assault and battery (Amended Complaint at ¶¶ 188-199), violation of her right to record law enforcement (*id.* at ¶¶ 168-177), negligent training and supervision (*id.* at ¶¶ 236-240), negligent planning of its protest response (*id.* at ¶¶ 241-258), and negligence by individual defendants (*id.* at ¶¶ 259-266) under state law; and municipal liability for her constitutional claims (*id.* at ¶¶ 152-155, 159-167), excessive force (*id.* at ¶¶ 178-187), First Amendment infringement and retaliation (*id.* at ¶¶ 200-215), and failure to intervene (*id.* at ¶¶ 210-216) under 42 U.S.C § 1983.

Plaintiff provided "[e]xamples of the RPD's unreasonable and discriminatory use of force at prior lawful protests" to establish a pattern of constitutional violations indicative of the City's deliberate indifference to her First Amendment claim. Amended Complaint ¶ 129. In May 2011, an officer arrested an uninvolved woman on her front lawn while she was recording police interaction, even after she responded reasonably to officers' requests to stop filming. (*Id.* at ¶ 162(a).) (*Id.* at ¶ 162(a).) A man, who had been asleep inside his home, exited to observe police interaction with another man. The officers sought to arrest him only after noticing his recording them. (*Id.* at ¶ 162(f).)

In support of her municipal liability claim for Fourth Amendment violations, Plaintiff stated that RPD officers were "given military-grade equipment and authority to spray and gas indiscriminately" (Amended Complaint at ¶ 109), and moreover, instructed to use force without determining if it was lawful to do so (*id.* at ¶ 114, first bullet). Former RPD Chief La'Ron Singletary also designed and implemented "unlawful policies that required RPD officers to use chemical weapons indiscriminately […] and to otherwise use unlawful and excessive force." *Id.* at ¶ 114, fifth bullet.

**MOTION TO DISMISS STANDARD**¶

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (internal quotations omitted), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must also draw all reasonable factual inferences in the Plaintiff's favor, they may decline to accept legal conclusions that plaintiffs present as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. at 678.

**ARGUMENT**

I. **PLAINTIFF HAS FAILED TO PROVIDE FACTS FOR A PLAUSIBLE MUNICIPAL LIABILITY CLAIM UNDER THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS, SO THIS THEORY OF LIABILITY MUST BE DISMISSED.**

Plaintiffs may assert municipal liability for constitutional violations in one of three ways: through (1) an official municipal policy or decision (*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978)); (2) a custom acquiesced to by the municipality (*Monell*, 436 U.S. at 691); or (3) deliberate indifference to the known, unconstitutional effects of the municipality's failure to train its employees (*Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Official municipal policy includes both lawmakers' decisions and "acts of its policymaking officials (*Monell*, 436 U.S. at 694; *Connick*, 563 U.S. at 61), in addition to "express rule[s] or regulation[s]" (*Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)).

To successfully plead a custom, a plaintiff can plead that "a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Littlejohn*, 795 F.3d at 315.

The failure to train or deliberate indifference standard is a "stringent" one (*Connick,* 563 U.S. at 61), because municipal liability attaches only where "the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights[]" (*City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). Because municipal decisionmakers must have notice that a training deficiency *causes* employees to violate constitutional rights (*Connick*, 563 U.S. at 61), it is "ordinarily necessary" to plead a "a pattern of similar constitutional violations by untrained employees" for liability pursuant to failure to train (*Connick*, 563 U.S. at 62).

Furthermore, the proffered pattern must be incredibly similar to the alleged injury or violation experienced by the claimant in order to establish municipal liability. *City of Canton*, 489 U.S. at 391.

For example, in *Connick*, the Supreme Court held that four *Brady* violations over ten years did not provide adequate notice of a need to train employees, because they pertained to different types of undisclosed material than the one affecting that plaintiff. *Connick*, 563 U.S. at 62-63. ("None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind. Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.")

Lastly, municipalities can only be liable for constitutional violations suffered and alleged by individual plaintiffs. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.") If a Plaintiff fails to plead or prove a constitutional violation, any municipal liability claim must also fail.

Plaintiff alleges all three methods of establishing *Monell* liability for each constitutional violation. Plaintiff must thus plead each theory under each amendment, in order to proceed to discovery on all pled liability claims. She fails, however, to plead any municipal liability claim, so all of her *Monell* liability claims must be dismissed.

   A. <u>Fourteenth Amendment</u>

Plaintiff does not plead any claims under the Fourteenth Amendment. She only brings claims under the First Amendment (i.e., seventh cause of action), Fourth Amendment (i.e., her fifth cause of action), and state law (i.e., her fourth, sixth, ninth through thirteenth claims). Without a Fourteenth Amendment claim, she has nothing from which she can extend liability to the municipality. *Segal*, 459 F.3d at 219. Any claim for municipal liability under the Fourteenth Amendment must, therefore, be dismissed.

B. <u>Fourth Amendment</u>

Plaintiff does not identify the specific Fourth Amendment right(s) for which she alleges *Monell* liability. Amended Complaint ¶¶ 153-155. Plaintiff only pled excessive force (*id.* at ¶¶ 178-187), however, so her facts to establish municipal liability must pertain to excessive force.

Plaintiff focuses on the policy theory of municipal liability (regarding excessive force). She claims that RPD officers were "given military-grade equipment and authority to spray and gas indiscriminately" (Amended Complaint ¶ 109), and moreover, instructed to use force without determining if it was lawful to do so (*id.* at ¶ 114, first bullet). She also claims that former RPD Chief La'Ron Singletary designed and implemented "unlawful policies that required RPD officers to use chemical weapons indiscriminately […] and to otherwise use unlawful and excessive force." *Id.* at ¶ 114, fifth bullet. Despite the emphasis on the City's poor policy, Plaintiff provides nearly no specificity—mentioning former RPD Chief Singletary only once. The remainder of Plaintiff's pleadings on this matter are mere "general and conclusory allegations" regarding unnamed but conveniently-described "policymakers." *Green v. Dep't of Educ. of N.Y.*, No. 20-cv-3785, 2021 U.S. App. LEXIS 32355, at *10, (2d Cir. October 29, 2021); Amended Complaint ¶ 108-109. These facts are insufficient to plausibly establish municipal liability pursuant to a municipal policy. *Green,* 2021 U.S. App. LEXIS 32355, at *10.

Because Plaintiff focused on policy, she failed to plead municipal liability (for Fourth Amendment violations) under the custom or failure to train theories. She has pled neither a pattern of "a pattern of similar constitutional violations by untrained employees" to establish the City's deliberate indifference to a failure to train (*Connick*, 563 U.S. at 62), nor that a discriminatory practice

6

is "widespread or persistent" as to become a custom[1] (*Littlejohn*, 795 F.3d at 315). The claim for municipal liability for Fourth Amendment violations must, accordingly, be dismissed.

C. First Amendment

Plaintiff alleges that "[p]ursuant to policy, RPD officers and MCSO deputies were ordered to target journalists, legal observers, and others like Ms. Flannery who were filming and/or documenting their response to the protesters, in retaliation for them documenting and/or recording the law enforcement response to the protests." Amended Complaint ¶ 110. This statement lacks specificity and is simply conclusory, and as such, insufficient to establish liability under a municipal policy.

Plaintiff then fails to present a plausible municipal liability pursuant to deliberate indifference, because she does not allege a pattern illustrating her First Amendment violations. Plaintiff provides three examples to support a pattern of constitutional violations (pursuant to the First Amendment), which she prefaces with "[e]xamples of the RPD's unreasonable and discriminatory *use of force* at prior lawful protests." Amended Complaint ¶ 129. Indeed, Plaintiff discusses *Fourth* Amendment violations in her examples, with the exercise of First Amendment rights merely providing the context or background. Use of force incidents, however, *cannot* support municipal liability for First Amendment violations, because facts indicating municipal liability under a failure to train theory must closely align to the violations alleged. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). City lawmakers cannot be said to have received notice of First Amendment constitutional violations through incidents of excessive force.

Even when focusing on relevant facts in the examples (Amended Complaint ¶ 129), the complaint has insufficient material to establish a deliberate indifference to the class of First

---

[1] Defendant City acknowledges statements that "City officials effectively ratified the RPD's violent response" and "[RPD] condoned its officers' actions." Amended Complaint ¶ 115. These provisions are insufficient, however, to establish a custom.

Amendment violations *she* alleges: viewpoint discrimination.[2] Taken as whole, the paragraphs actually refute any notion of viewpoint discrimination as the City responded similarly to each viewpoint. Amended Complaint ¶ 129.

The municipal liability claim under the First Amendment fails to reach plausibility under any theory, so it should be dismissed.

> **II.    PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY MUST BE DISMISSED, BECAUSE SHE FAILED TO PLEAD SUFFICIENT FACTS TO ESTABLISH A POLICY, CUSTOM, OR DELIBERATE INDIFFERENCE TO A PATTERN OF CONSTITUTIONAL VIOLATIONS FOR RETALIATING AGAINST HER FOR RECORDING LAW ENFORCEMENT.**

Plaintiff again alleges all three methods of establishing *Monell* liability for a violation under the First, Fourth, and Fourteenth Amendments. To be specific, Plaintiff seeks municipal liability for officers "retaliating against individuals who are lawfully recording them perform their duties in public places." Amended Complaint, heading to ¶¶ 159-167. This is considered a *First* Amendment claim in other federal appellate courts (*Glik v. Cunniffe, 655 F.3d 78, 82, 85* (1st Cir. 2011); *Smith v. City of Cumming,* 212 F.3d 1332, 1333 (11th Cir. 2000)), and she has not alleged how "retaliating against [her for] lawfully recording [officers]" might constitute a violation of her Fourth or Fourteenth Amendment rights. Plaintiffs may not claim liability for violations they have not pled (*Segal*, 459 F.3d at 219), so municipal liability for violations of the Fourth and Fourteenth Amendments (for alleged retaliation for recording police officers) must be dismissed.

Regarding the purported First Amendment violation, Plaintiff unsuccessfully attempts to establish municipal liability under the policy and custom theories of liability. Plaintiff makes two

---

[2] Plaintiff includes a separate claim for municipal liability for retaliation against individuals who record law enforcement activities (Amended Complaint ¶¶ 159-167), so Defendant City assumes she only addresses municipal liability for viewpoint discrimination under her first claim for municipal liability (Amended Complaint ¶¶ 153-155). Insofar as her First Amendment retaliation claim applies to both municipal liability claim, Defendant City moves to dismiss the first claim as redundant of the more specific third claim for municipal liability.

general statements regarding officers acting pursuant to policies regarding retaliation for recording law enforcement activities. (Amended Complaint ¶ 19, 110.) These statements lack any specificity regarding the substance or origin of these alleged policies. She declines altogether to assert a custom.

Plaintiff focuses instead on establishing municipal liability through deliberate indifference (Amended Complaint ¶ 162), but again falls short, because she declines to provide facts to support her conclusory statements that officers retaliated against individuals *because of their* recording officers. Plaintiff forgets that the allegations in support of municipal liability must be similar to the violation alleged by Plaintiff. *Connick*, 563 U.S. at 62-63. Just as the proffered examples were not "*the sort of Brady violation* at issue [t]here" (*id.* at 62)(emphasis added), Plaintiff's examples in Amended Complaint paragraph 162 are not (clear) examples of retaliatory conduct that would provide notice to the City of the inadequacy of its training.

Plaintiff provides twelve examples, yet only two (on their face) pertain to this class of First Amendment violations and thus, only those two could possibly provide notice of constitutional violations: a May 2011 arrest of a woman (Amended Complaint at ¶ 162(a)) and a June 2020 arrest of a man (*id.* at ¶ 162(f)). The woman was on her front lawn recording police interaction and responded reasonably to officers' requests to stop filming before an officer approached and arrested her. *Id.* at ¶ 162(a). The facts that she was an uninvolved bystander on her own property supports an inference of retaliation. *Id.* at ¶ 162(a). Second, the man, who had been asleep inside his home, exited to observe police interaction with another man. The facts that officers sought to arrest him only after noticing his recording the interaction suggests retaliation. *Id.* at ¶ 162(f.)

The other examples in Amended Complaint paragraph 162 fail to contain facts indicating retaliation towards individuals who record officers. Two incidents are presented solely in two conclusory statements: the individuals were assaulted, arrested, and recorded officers, and then the City settled their claims. Amended Complaint ¶ 162 (b, d). Plaintiff failed to provide any facts

9

supportive of her conclusion (or a reasonable inference) that these were retaliatory actions and the arrestees' actions did not otherwise warrant arrest in these two situations. Plaintiff's July 2016 example suggests race discrimination, not retaliation for recording, as Plaintiff alleges that Black journalists were arrested when White journalists were not. *Id.* at ¶ 180 (c).

Because one woman had already been pulled over for a traffic stop, begun interacting with the officer, and declined to exit her vehicle, it is not clear that the subsequent arrest was caused by her recording. *Id.* at ¶ 180(e). In Plaintiff's August 2020 example, Plaintiff denies that an observer was in violation of a curfew for gatherings,[3] but does not address whether the observer had been in violation of the indoor limit on gatherings while in the bar[4] or "in the vicinity of [the bar]" or otherwise acted inappropriately. *Id.* at ¶180(g).

Three examples occurred on or after September 3, 2020—the date of Plaintiff's constitutional injury (*id.* at ¶¶ 180(h-k), 56)—so they could not have notified the City of training failures prior to Plaintiff's alleged violations. Two final examples occurred on December 18, 2020 (*id.* at ¶ 180(k-l)—*after* her constitutional injury (on September 3, 2020, *id.* at ¶ 56). None of these two examples could have provided notice to the City if they *had not yet occurred*, so they are irrelevant.

The two examples (from May 2011 and June 2020)[5] that contain sufficient detail to infer retaliatory conduct do not, however, constitute "a pattern of similar constitutional violations" for

---

[3] Beginning in August 2020 through at least September 3, 2020, City of Rochester Mayor issued Local Emergency Orders that prohibited outdoor gatherings of five or more in public places and indoor gatherings of ten or more from the hours of 11:00pm to 5:00am. *Martin v. Warren*, 482 F. Supp. 3d 51, 56-57 (W.D.N.Y. 2020).

[4] The man was arrested "in front of a bar called Murphy's Law," while the observer was arrested "in the vicinity of East Avenue and Alexander Street." Amended Complaint ¶ 102(g). Murphy's Law is located at 370 East Avenue in Rochester, NY—which is a few yards from the corner of East Avenue and Alexander Street. They were at the same location: the bar.

[5] As Plaintiff incorporates all preceding and subsequent paragraphs (Amended Complaint ¶ 159), an example elsewhere in the complaint could also be considered to support a pattern of retaliation against those recording law enforcement. (Amended Complaint ¶ 129, third bullet) A protestor is quoted as saying "I wasn't doing

10

municipal liability pursuant to failure to train or a custom. *Connick*, 563 U.S. at 62. Plaintiff has, accordingly, failed to sufficiently plead municipal liability (pursuant to the policy, custom, or deliberate indifference theories) for her First Amendment retaliation claim, and this liability claim should be dismissed.

As explained in IV herein, the right to record law enforcement is not recognized in this district or this Circuit, so any claim for retaliation on that basis must be dismissed. If the Court dismisses the underlying claim, any municipal liability claim must also be dismissed. *Segal*, 459 F.3d at 219.

### III. PLAINTIFF FAILED TO PLEAD THAT SHE RECORDED LAW ENFORCEMENT OFFICERS PERFORMING THEIR DUTIES, SO HER CLAIM FOR INTERFERENCE WITH RECORDING MUST BE DISMISSED.

New York State Civil Rights Law § 79-p permits individuals to record law enforcement activities and creates a private right of action for violations of that right. "A claim of unlawful interference with recording a law enforcement activity is established under this section when a person *demonstrates that he or she exercised or attempted to exercise the right […] to record a law enforcement activity* and an officer acted to interfere with that person's recording of a law enforcement activity[.]" CIVIL RIGHTS LAW § 79-p [3] [a] (emphasis added). The statutory examples of "act[ing] to interfere" emphasize that an officer must have the purpose to interfere with a *present* exercise of the right to record, e.g., "intentionally preventing or attempting to prevent that person from recording law enforcement activity" (CIVIL RIGHTS LAW § 79-p [3] [i]) or "commanding that the person cease recording law enforcement activity" (*id.* § 79-p [3] [iii]).

Plaintiff's claim fails, because she does not allege that she was recording law enforcement officers—or even attempting to. She claims she was retaliated against for recording officers

---

anything[;] I was taking pictures." Later in the paragraph, however, Plaintiff suggests they were targeted for their race, and not their recording activities. *Id.*

11

(Amended Complaint ¶ 56), and leaves the Court and defendants to *assume* that at some point she recorded police officers. Furthermore, she pleads retaliation, not interference. (She complains of reprisal for a prior action, not that police officers sought to end, block, or hinder her from actively recording them. Amended Complaint ¶¶ 19, 56, 110. ) Plaintiff has not pled sufficient, applicable facts for this cause of action, so it must be dismissed.

### IV. PLAINTIFF FAILS TO PLAUSIBLY STATE ANY FIRST AMENDMENT INFRINGEMENT AND RETALIATION CLAIMS, SO THIS ENTIRE CAUSE OF ACTION MUST BE DISMISSED.

Plaintiff brings a First Amendment infringement claims without stating which First Amendment right has been violated. The First Amendment to the United States Constitution prohibits Congress from making laws "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceable to assemble, and to petition the Government for a redress of grievances." The City Defendants thus move to dismiss the parts of this cause of action that pertain to the establishment clause, free exercise of religion, freedom of the press, right to assemble, or the right to petition the Government. The Amended Complaint contains no hint of religion, the press, or petitions. (City Defendants acknowledge that Plaintiff participated in a protest with hundreds or thousands of other protestors (Amended Complaint ¶¶ 61, 83, 115), but she does not allege that her right to assemble has been violated. Without allegations that Defendants prevented her from assembling with others, claims regarding the "right to assemble" must also be dismissed from this claim.) All rights protected by the First Amendment that are unrelated to speech—i.e., establishment clause, free exercise of religion, freedom of the press, right to assemble, or the right to petition the Government—must be dismissed from Plaintiff's umbrella claim of "First Amendment Infringement," because Plaintiff failed to factually support violations of those rights.

The City Defendants also address viewpoint discrimination, in case Plaintiff, like other plaintiffs bringing cases arising from the September 2020 protests who have retained the same counsel,[6] purports to bring a viewpoint discrimination claim in her seventh cause of action. Any viewpoint discrimination claim must be dismissed, because only Plaintiff's conclusory statements support this theory; Plaintiff has not pled any facts that indicate differential treatment compared to others' viewpoints. (Amended Complaint ¶¶ 18, 36.) The City has not enacted an ordinance that prohibited negative or derogatory trademarks (as in *Matal v. Tam*, 137 S. Ct. 1744 (2017)), nor has it denied funding to a group based on its religious views, as in *Rosenberger* (*v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819). Plaintiff cites no examples of individuals who were treated more favorably when sharing a different viewpoint.

Plaintiff also pleads a First Amendment retaliation claim (based on her presumed right to record law enforcement), even though such a right is not recognized in this Circuit. As recently as 2015 and 2016, the Southern District of New York acknowledged that neither the U.S. Supreme Court nor the Second Circuit had decided to recognize a right to record police officers. *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 379 (S.D.N.Y. 2015) (recognizing a right to record police activity); *but see Basinski v. City of New York*, 192 F. Supp. 3d 360, 367-369 (S.D.N.Y. 2016) (granting qualified immunity because the right to record police activity was not clearly established). In the appeal of the district court's award of summary judgment in *Higginbotham*, the Second Circuit declined to squarely address the existence of this right when it decided that summary judgment was appropriate for the false arrest and First Amendment retaliation claims. *Higginbotham v. Sylvester*, 741 Fed. Appx. 28, 31 (2d Cir 2018). The U.S. Supreme Court has similarly not opined on this issue, and in 2021, declined to hear a case that squarely confronted that issue. *Frasier v. Evans,* 992 F.3d

---

[6] See e.g., in Barnhart v. City of Rochester et al (21-cv-6718), Plaintiff explains in her Opposition to the City's Motion to Dismiss (Docket no. 19, pgs. 16-17) that she brought a viewpoint discrimination claim in her third claim for relief (Amended Complaint ¶¶ 102-109).

1003, 1015 (1015-1023)(10th Cir. 2021) (holding that the right to record police activity was not clearly established at time of incident), *cert. denied*, No. 21-57, 2021 U.S. LEXIS 5431, at *1 (U.S. November 1, 2021). Plaintiff may not plead the violation of a non-existent right.

V. **PLAINTIFF'S FAILURE TO INTERVENE CLAIM MUST BE DISMISSED, BECAUSE LAW ENFORCEMENT OFFICERS MUST KNOW ABOUT OTHERS' UNCONSTITUTIONAL ACTIONS TO INTERVENE.**

(Defendant City joins its Officer Romano in moving to dismiss the fourth claim for relief, insofar as Plaintiff seeks to hold the City liable for the failure to interview by City employee, in addition to Mr. Romano.)

Plaintiff's eighth cause of action for failure to intervene must also be dismissed, because Plaintiff has not pled the officers knew of a constitutional violation.

Federal law recognizes that law enforcement officers have "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). To be liable for failing to intervene, an officer must have known that a constitutional violation was being committed *and* have had a realistic opportunity to intervene to prevent the harm from occurring. *Anderson*, 17 F.3d at 557.

Plaintiff's failure to intervene claim fails, because Plaintiff failed to include facts that the only named RPD officer, Paul Romano, knew constitutional violations occurred or that he (specifically) had a realistic opportunity to intervene. She only states in a conclusory fashion that "[t]he individual Defendants failed to intervene on Plaintiff's behalf despite having had realistic opportunities to do so." Amended Complaint ¶ 212. As such, the claims for failure to intervene must be dismissed, because necessary elements of failure to intervene—their knowledge of a constitutional violation and ability to stop it—are not sufficiently set forth by Plaintiff.

VI. **PLAINTIFF'S NEGLIGENT SUPERVISION, TRAINING, AND DISCIPLINE CLAIMS AGAINST THE CITY MUST BE DISMISSED, BECAUSE PLAINTIFF CLAIMED THE CITY'S OFFICERS WERE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT.**

Plaintiff's eleventh cause of action must also be dismissed, because Plaintiff has not pled that RPD officers were acting outside of the scope of their employment, which is required for a claim that the City was negligent in training, supervising, and disciplining them.

In order for a municipality to be liable for negligence supervision, training, and hiring under New York State law, municipal employees must have been acting *outside* of the scope of their employment. *Velez v. City of New York*, 730 F.3d 128 (2d Cir. 2013); *Watson v. Strack*, 5 A.D.3d 1067, 1068 (4th Dep't 2004). Plaintiff failed to allege this. In fact, instead of claiming City employee-officers acted outside the scope of their employment, Plaintiff repeatedly pleads they were acting *within* the scope of their employment. (Amended Complaint ¶¶ 174, 194-195, see also ¶¶ 4, 96.) As Plaintiff alleges only that officers acted within the scope of their employment, Plaintiff has failed to provide facts that support City liability for negligent training, supervision, and hiring, and this Court must dismiss this—Plaintiff's eleventh—claim for relief.

VII. **PLAINTIFF'S NEGLIGENCE CLAIMS MUST BE DISMISSED, BECAUSE PLAINTIFF FAILED TO PLEAD A DUTY OWED TO PLAINTIFF.**

Plaintiff's twelfth and thirteenth claims must also be dismissed, because Plaintiff has not pled a duty necessary for her claim that the City or individual RPD officers acted negligently.

Although Plaintiff entitles her claim "Negligent Planning of the Protest Response," the allegations indicate that she seeks liability for alleged failure to provide police protection. The paragraphs of these causes of action repeatedly refer to safety, protection, and harm caused by the City's alleged negligence, e.g., "[t]he City breached [its] duty to keep demonstrators safe" (Amended Complaint ¶¶ 246-248, 251-256) or RPD officers had a duty "to protect [protestors] from harm or

15

physical violence" (*id.* at ¶ 261). New York State municipalities and police officers, however, cannot be held liable for failing to provide police protection, unless a "special relationship" exists between the claimant and the municipal police. *Cuffy v. New York*, 69 N.Y.2d 255, 260 (N.Y. 1987); see also *Coleson v. City of New York*, 24 N.Y.3d 476, 481 (N.Y. 2014). The special relationship gives rise to a duty on which negligence may be claimed.

A special relationship forms in one of three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation." *Pelaez v. Seide*, 2 N.Y.3d 186, 199-200 (N.Y. 2004). Most plaintiffs allege that they have justifiably relied on a voluntarily assumed duty, and plead the following elements to establish a special relationship in that way: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Cuffy*, 69 N.Y.2d at 260.

Plaintiff states in her allegations the City had a "special duty" towards herself and the protestors (Amended Complaint ¶ 244), but goes no further in pleading the elements of a special relationship between herself and the City. Plaintiff has not alleged a statutory duty imposed on the City, or the City's control of a safety violation. Plaintiff also never alleged she justifiably relied on the City's promises or actions, which in the interest of fairness would support the imposition of City liability. Plaintiff has simply failed to plead a special relationship—and thus failed to establish a duty owed by the City to the Plaintiff.

If Plaintiff believes that a different duty supports her negligent planning claim, she fails to identify it. Without a duty, Plaintiff's allegations in her twelfth claim for relief that the City and/or its officers breached their duties toward Plaintiff must be dismissed

## CONCLUSION

For the foregoing reasons, the City Defendants respectfully request that the Court grant its motion to dismiss the Plaintiff's first, third, fourth, seventh, eighth, eleventh, twelfth, and thirteenth claims for relief, and award the Defendant such other relief as the Court deems proper.

Date: March 3, 2022                              LINDA KINGSLEY
                                                 CORPORATION COUNSEL

                                                 By: _____
                                                 Peachie L. Jones, Esq., Of Counsel
                                                 *Attorneys for Defendant City of Rochester*
                                                 30 Church Street, Room 400A
                                                 Rochester, NY 14614
                                                 (585) 428-7992